## TRASK v. MILLS NOVELTY CO.

No. 1453.

District Court, N. D. Illinois, E. D.

May 6, 1943.

Markman, Donovan & Sullivan, of Chicago, Ill., for plaintiff.

Kirkland, Fleming, Green, Martin & Ellis, of Chicago, Ill., for defendant.

CAMPBELL, District Judge.

In this case Allen Trask, a citizen of Minnesota, sues Mills Novelty Company, a

corporation of Illinois, for damages for breach of a contract attached to the complaint. The cause was taken under advisement following trial. I have carefully reviewed the transcript of the testimony taken at the trial, the depositions offered by the plaintiff, the documentary evidence received as exhibits from both plaintiff and defendant, and the briefs and arguments filed by counsel.

Arranging the documentary exhibits chronologically without reference to whether they were introduced by plaintiff or defendant, and considering the history thus given, together with the deposition of Mr. McNeal and the testimony of Mr. Trask, a clear picture of this situation is presented.

The contract which forms the basis of this suit was entered into between plaintiff and defendant on May 2, 1935, and relates principally to the manner in which the plaintiff shall be compensated for certain of his inventions which he had theretofore sold and assigned to the defendant.

The plaintiff is a mechanical engineer who shortly following his release from the army after the last war commenced development and experimental work on hermetically sealed refrigeration compressors. In 1931 he went to work for the Excelsior Motor Manufacturing & Supply Company of Chicago where he continued his experimentation and completed some working models. In November of 1934 he left the Excelsior Motor Manufacturing & Supply Company and was employed by the defendant. His duties were to do engineering work in general and development of his refrigeration compressor in particular. At the time of his employment an oral understanding was had that should the development of the compressor proceed as both parties hoped, that the defendant would pay royalties to the plaintiff on any of his compressors that it might manufacture. On May 2nd, 1935, the written agreement which is the basis of this suit was entered into between the plaintiff and the defendant. At that time application for letters patent had been filed and are referred to in the contract. The plaintiff was then receiving a salary of $75 per week from the defendant and the defendant was furnishing all necessary equipment and material and other assistance in the development of the compressors. This cooperative relationship continued and resulted ultimately in the granting of letters patent No. 2065162 on December 22, 1936, and No. 2106775 on February 1, 1938. It is agreed by both plaintiff and defendant that the financial contribution of the defendant to the development of the compressor and the issuance of said patents totals approximately $32,000.

The plaintiff continued working for the defendant and subsequently was appointed its chief engineer and his salary increased to $100 per week. In January of 1936, he was told by Mr. Mills of the defendant corporation that he could discontinue his development work on the compressor and devote himself entirely to other work for the reason that the defendant felt that its plans for manufacturing the compressor units would have to be abandoned as commercially impracticable. He was also told that he might try to find some other manufacturer to take a license on manufacturing his compressor. Subsequently some further experimental work was done on the compressor in the defendant's factory under the direction of the plaintiff who continued as chief engineer of the defendant company.

Shortly thereafter, the Universal Cooler Corporation of Detroit, Michigan, evidenced an interest in the compressor and negotiations with that corporation were commenced by the plaintiff on behalf of the defendant. On August 19, 1936, the defendant in a letter signed by the plaintiff as its Chief Engineer (defendant's Exhibit 2) set forth the terms on which the defendant would be willing to grant the Universal Cooler Corporation a license to manufacture compressors under the patents referred to herein. Negotiations continued and the Universal Cooler Corporation took an option for which it paid $2,500, received material, machinery, dies, tools, plans, etc., from the defendant and experimented with the device. In March of 1937 the plaintiff left the defendant's employ. At that time no agreement had been concluded with Universal Cooler Corporation. Negotiations continued between the defendant and Universal Cooler Corporation. In some of these negotiations the plaintiff took part and in others he did not. The negotiations are clearly and completely reflected in the chronological review of the documentary evidence hereinabove referred to. At one stage of the negotiations an agreement between the defendant and Universal Cooler Corporation seemed imminent if royalty payments could

be reduced. At that point the plaintiff agreed to take a reduction in royalty payments which would be due him under his contract with the defendant and in October of 1937 signed a contract to that effect (plaintiff's Exhibit 11), but this contract was never executed by the defendant and no agreement on this point was consummated.

Meanwhile, however, Universal Cooler Corporation made further changes in the proposed agreement with the defendant which were unsatisfactory to the defendant. Although various terms were discussed from time to time throughout the entire period of negotiations, the only definite counter-proposal to the defendant's offer of August 19, 1936 (defendant's Exhibit 2) was a proposed license agreement prepared in rough draft by Universal Cooler Corporation on December 9, 1937, and offered to the plaintiff at or about that time (plaintiff's Exhibit 8). It is this proposal which plaintiff here contends should have been accepted by the defendant and which forms the basis of this suit. The terms of this proposed agreement were not satisfactory to the defendant and it therefore rejected the same. Some further negotiations were had with Universal Cooler Corporation relative to an outright purchase of the patents, but these did not materialize into an agreement and on April 19, 1938, Universal Cooler Corporation definitely terminated the negotiations (plaintiff's Exhibit 10).

The plaintiff contends that since the defendant never manufactured any compressors embodying the patent rights referred to, that the defendant has evidenced its intention not to use the said patents, that the Universal Cooler Corporation made a reasonable offer for a license under the said patents and that the defendant neglected and refused to enter into a contract with Universal Cooler Corporation, which neglect and refusal constitutes a breach of his contract with the defendant and results in pecuniary damage to the plaintiff.

The defendant admits the contract of May 2, 1935, but denies that it has refused and neglected to manufacture and sell any compressors thereunder and asserts that it is still considering the manufacture and sale of such compressors when conditions warrant. It further denies that it had any obligation under the said contract to grant a license to anyone, and even if it had, that the negotiations with the Universal Cooler Corporation did not produce a fair and reasonable license agreement.

The plaintiff relies on paragraph 6 of the contract of May 2, 1935, which reads as follows: "In the event the Company shall decide not to employ the inventions set forth in patent applications Serial Nos. 691,601 and 739,193, or, having begun to use them, should discontinue such use, permanently, then the Company will not sell but will be willing to grant licenses to others to manufacture and sell refrigeration compressors under patent applications Serial Nos. 691,601 and 739,193 and in all such cases the Company shall, upon receipt of payments of royalties derived under any such license, pay to the Inventor, from any such proceeds, the sum of twenty-five cents (25¢) for each refrigeration compressor unit included in said royalty payments."

It is agreed that the defendant has not "begun to use" the inventions of the plaintiff. It is questionable whether the plaintiff has shown that the defendant has decided "not to employ the inventions", which would be a condition precedent to requiring the defendant to license another manufacturer. Assuming however that the defendant has so decided, the question then arises as to the terms and conditions under which the defendant would be required to grant a license pursuant to this contract. Obviously since no conditions (other than the amount to be paid per unit to the plaintiff) are set forth in the contract itself, the law will imply that the terms of such a license must be just and reasonable. A reading of the contract (Exhibit A) reveals that the defendant's original offer to the Universal Cooler Corporation under date of August 19, 1936 (defendant's Exhibit 2) made by the plaintiff himself on behalf of the defendant, is fair and reasonable under paragraph 6 of the contract and would amply provide for the payment to the plaintiff of royalties therein specified.

The only definite counter-proposal ever made by Universal Cooler Corporation in all of its negotiations is set forth in plaintiff's Exhibit 8. A review of this Exhibit clearly demonstrates that it is so vastly different from the offer originally made by the defendant and from the type of license reasonably contemplated by paragraph 6 of the contract between plaintiff and defendant that it is not worthy of serious consideration. Although in the course of its negotiations the defendant

had greatly reduced its original demands of the Universal Cooler Corporation for a license agreement, the counter-proposal of the Universal Cooler Corporation was so far away from anything that the defendant had ever offered that it should hardly be classed as a counter-proposal. The proposed provision for cancellation by Universal Cooler Corporation on sixty days notice without any right to the defendant to cancel is but one of the many odious conditions that warrant the defendant's refusal to consider it. It is my opinion that the proposed license agreement which Universal' Cooler Corporation was willing to enter into with the defendant was not just and reasonable and cannot form the basis for damages under paragraph 6 of the contract between plaintiff and defendant.

The contract between the plaintiff and defendant seems a fair one. The plaintiff contributed his genius and the defendant put up a substantial sum of money. Neither has realized anything from the agreement thus far other than the salary which the plaintiff received while he was in the employ of the defendant. Both parties naturally and properly hope to realize: the plaintiff from royalties arising from the manufacture of his compressor by the defendant or by a licensee; the defendant from profits of its own manufacturing or from royalties of a licensee over and above those payable to plaintiff. Since both plaintiff and defendant have contributed to the patents, both have a right to reasonable protection in any proposed licensing arrangement. Such reasonable protection of its business is, I feel, all that the defendant was asking in its negotiations with Universal Cooler Corporation.

The defendant pointed out at the trial that manufacture of refrigerator compressors was then not being undertaken by reason of war conditions. Factories adaptable to this type of production were then and still are urgently needed to produce materials of war. Thus even if the defendant had been successful in concluding a satisfactory licensing arrangement with Universal Cooler Corporation it is doubtful whether many compressors could have been manufactured before defense contracts would have halted production. Whether or not the plaintiff's compressor will be of commercial use after the war is problematical. Meanwhile, both before and since filing his complaint in this case, the plaintiff was not limited by his contract with the defendant from attempting to find some other licensee, but apparently he has been unable to do so.

It is therefore my opinion that the plaintiff has failed to establish his case, and accordingly, I find the issues for the defendant and the cause will be dismissed at plaintiff's costs. Counsel for the defendant may prepare and file with the court, in writing, within twenty days from the date hereof, proposed findings of fact, conclusions of law, and a draft of a proposed order of dismissal, consistent with the views herein expressed, delivering copies thereof to counsel for the plaintiff. Within twenty days of the receipt of such copies counsel for the plaintiff may prepare and file with the court, in writing, his observations with reference thereto and suggestions for the modification thereof, delivering a copy of such observations and suggestions to counsel for the defendant. Within ten days thereafter counsel for the defendant may present to the court, in writing, his reply to such observations and suggestions. Whereupon, the matter of making findings of fact, conclusions of law and an order of dismissal herein will be taken by the court without further argument.